STATE of Missouri, Respondent,

v.

Val E. JOHNSON, Appellant.

Val E. JOHNSON, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 43549, WD 44693.

Missouri Court of Appeals,
Western District.

April 7, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 2, 1992.

David S. Durbin, Appellate Defender, Anthony C. Cardarella, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

FENNER, Presiding Judge.

In this consolidated appeal, Val E. Johnson appeals his convictions of first degree robbery and armed criminal action and the denial of his motion for post-conviction relief.

The evidence adduced at trial, viewed in the light most favorable to the verdict, revealed that at approximately 5:30 p.m., on April 13, 1989, the victim, Ms. Dorothy Hosier, drove into the parking lot of a grocery store located in Raytown, Missouri. Ms. Hosier had stepped out and was standing beside her car when she was ap-

proached by a man who ordered her to give him her purse.

When Ms. Hosier attempted to talk the assailant out of his demand by informing him she only had a little money, a struggle ensued, and the assailant struck Ms. Hosier on the head with a chrome-colored handgun, knocking her to the ground. The assailant fled, leaving Ms. Hosier with a head laceration, bleeding and a slight concussion.

Officer Paul White of the Raytown Police Department responded to the crime scene and recorded the statements of Ms. Hosier and two eyewitnesses, Mr. William O'Leary and Ms. Kimberly Brown. Ms. Hosier described the assailant as a black male, with bushy hair, approximately 5′7″ to 5′10″ tall, weighing between 165 to 170 pounds, medium complexion and pronounced cheeks and nose. Mr. O'Leary had just driven in the parking lot when he heard a woman screaming for help. He then saw a man, carrying a purse run in front of him who jumped into the passenger side of a car and "took off." Mr. O'Leary described the assailant as a black male, with an "afro" and a "chubby" or "stocky" build. Ms. Brown had copied the license plate number of the car that the assailant used to flee from the scene, which she provided to Officer White. She described the assailant as a black male, 6′3″, 175 pounds with a skinny build.

A trace of the license number indicated that the registered owner was a Ms. Varnice Johnson, who was then contacted by Detective Stan Pearson of the Raytown Police Department. Ms. Johnson informed Detective Pearson that she had loaned her car to her boyfriend, Tony Dewbarry who had, in turn, loaned the car to appellant, Johnson. Johnson was then located and arrested.

Detective Steve Santoli of the Raytown Police Department compiled a six man array of photographs. Ms. Hosier positively identified Johnson from the photographs as the man who had taken her purse. Ms. Brown was not able to make an identification of the assailant after viewing the photographs.

Ms. Brown failed to respond to a subpoena and was not present on the second day of trial as the State was ready to close its case. The parties entered into a stipulation whereby Ms. Brown's statement to Officer White could be received as evidence in lieu of her testimony. Ms. Brown's statement was then read into evidence and received as an exhibit.

Following trial, Johnson was found guilty by the jury and sentenced as a prior and persistent offender. Johnson filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15, which was overruled following an evidentiary hearing.

■ Johnson presents three points on appeal, the first of which alleges that the motion court clearly erred by denying his request for post-conviction relief which alleged that trial counsel was ineffective for failing to secure the attendance of Ms. Kimberly Brown at trial. He argues that the action of trial counsel of entering into a stipulation with the State as to the testimony of Ms. Brown denied him his right to due process, to confrontation of witnesses, to compulsory process of witnesses and to effective assistance of counsel.

At the post-conviction hearing, the appellant's former trial counsel testified that both the defense and the prosecution had attempted to subpoena Ms. Brown prior to trial. Trial counsel explained that Ms. Brown "had been unavailable to the defense as well as the State throughout the course of the investigation." She said their process server "had looked for Ms. Brown for some time" before the subpoena was finally served on her. Even after she had been subpoenaed, Ms. Brown apparently "had indicated to the State that she would not appear."

When Ms. Brown failed to honor the subpoena on the second day of trial, trial counsel discussed with Johnson the possibility of stipulating to her testimony. Trial counsel explained that she elected to enter into a stipulation with the prosecution as to what Ms. Brown's testimony would have been had she been present because the stipulation was "favorable to the defense,"

since the description of the robbery contained in Ms. Brown's stipulated statement did not match the victim's description of the assailant. The sole theory of defense was "misidentification," which she had fully discussed with Johnson. Although trial counsel generally agreed that there usually is "an advantage to a live witness," she believed that Ms. Brown's testimony "would have been the same" as the stipulation. Trial counsel also noted that if the State had not decided to offer Ms. Brown's testimony into evidence, she would have presented it on behalf of the defense.

Following the hearing, the motion court entered its order overruling Johnson's post-conviction motion. In the findings of fact and conclusions of law the motion court found that the stipulated testimony aided Johnson's theory of defense and that the decision by trial counsel to stipulate was a matter of trial strategy which had been fully discussed with Johnson. The motion court also noted that Johnson had failed to produce Ms. Brown as a witness at the evidentiary hearing, and therefore it would be sheer speculation to assert that if she had been called as a witness her trial testimony would have been more beneficial to his defense than what had been presented to the jury through the stipulation.

■ On appeal, review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law issued by the hearing court are "clearly erroneous." *State v. Twenter*, 818 S.W.2d 628, 635[8] (Mo. banc 1991). Deference will be given to the motion court's superior opportunity to judge the credibility of the witnesses. *Id.*

■ To prevail on a claim of ineffective assistance of counsel, a movant must establish, by a preponderance of the evidence, (1) that his attorney's performance was deficient, *i.e.*, that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

■ Allegations of ineffective assistance of counsel relating to matters of "trial strategy" do not provide the basis for post-conviction relief. *Rainwater v. State*, 770 S.W.2d 368, 370 (Mo.App.1989). In making tactical decisions there exists a strong presumption that counsel was effective and it will be the rare exception where a strategic choice is declared to have been so unsound as to amount to ineffectiveness. *Lytle v. State*, 762 S.W.2d 830, 834 (Mo.App.1988).

■ A client is bound by the decisions of counsel as to the management of the trial and as to the stipulations which give effect to that strategy. *State v. Johnson*, 714 S.W.2d 752, 765 (Mo.App.1986). A stipulation of counsel, deliberately wrought and then given effect, binds not only the client but, as the orderly administration of justice demands, is given credit by a court of review. *Id.* Likewise, an informed, tactical decision not to call a witness to testify is a matter of trial strategy that is "virtually unchallengeable." *State v. Anderson*, 785 S.W.2d 596, 600 (Mo.App.1990).

A careful review of the record reveals that trial counsel, as found by the motion court, exercised reasonable trial strategy and in fact, acted in a fashion favorable to the best interest of her client. She could hardly be found ineffective for doing so. Point one is denied.

■ In point two, Johnson argues that the trial court erred in overruling his pre-trial motion to suppress the identification testimony of Dorothy Hosier because the State failed to present her testimony at the hearing on the motion. He contends that pursuant to § 542.296.6, RSMo 1986, "both the burden of going forward with the evidence and the risk of non-persuasion" rests on the State.

■ Initially, it is noted that this issue must be reviewed under the "plain error" rule as it was not asserted in the motion for new trial and therefore, not preserved for review. Plain error is established only where the error is so substantial that, without correction, manifest injustice or miscarriage of justice will result. *State v. Step-*

**634**

*ter,* 794 S.W.2d 649, 655 (Mo. .banc 1990). A review of the record reveals an absence of manifest injustice.

Section 542.296.6, RSMo 1986, relied on by Johnson, is inapplicable herein. Chapter 542 relates to Searches and Seizures and more specifically § 542.296 is applicable to those aggrieved by an unlawful search and/or seizure and seek therefore, to file a motion to suppress from evidence the property unlawfully seized. It does not apply to a motion to suppress identification testimony and is of no aid to Johnson.

Further, the evidence presented at the hearing on the motion to suppress failed to establish that the procedures used at the pretrial identification were unduly suggestive. When determining the admissibility of identification testimony that is alleged to have resulted from suggestive pretrial identification procedure, a two prong test is applied: (1) was the pre-trial identification procedure suggestive, and if so, (2) what impact did the suggestive procedure have upon the reliability of the identification made by the witness? *State v. Morant,* 758 S.W.2d 110, 117 (Mo.App.1988) (citation omitted). Where, as here, an appellant argues that the initial photographic array was unduly suggestive, but provides no factual basis for the claim, there exists no foundation for a finding of impermissible suggestiveness. *Id.*

Johnson argues that because the only testimony heard by the hearing court was that of Detective Santoli and because the court did not have the opportunity to hear from the victim, Ms. Hosier, somehow an error existed in the overruling of his motion to suppress. However, he states no facts upon which a finding could be made that the pretrial identification procedure was suggestive. He has thus failed in his burden in that he has presented no evidence of impermissible suggestiveness in the pretrial identification procedure. *State v. Morant,* 758 S.W.2d at 117. Point two is denied.

In his third and final point, Johnson argues that the trial court committed plain error in submitting to the jury Instruction No. 4, patterned after MAI–CR3d 302.04 because the definition of "reasonable doubt" therein allowed the jury to convict him based on a quantum of proof that is less than "beyond a reasonable doubt."

Johnson's argument has been rejected by the Missouri Supreme Court. *See, State v. Twenter,* 818 S.W.2d at 634. Likewise, Johnson's argument that this issue needs to be reconsidered in light of *Cage v. Louisiana,* 498 U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), has no merit because in *State v. Griffin,* 818 S.W.2d 278, 282 (Mo. banc 1991), the Missouri Supreme Court has held that *Cage* does not undermine the validity of the "reasonable doubt" contained in MAI–CR3d 302.04. This court is bound by those decisions. Point three is overruled.

For the foregoing reasons the judgments of the trial court and motion court are, in all respects, affirmed.

All concur.