**Brad ADKINS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 64332.**

Missouri Court of Appeals,
Western District.

Sept. 6, 2005.

Jeannie Marie Willibey, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun Mackelprang, Office of Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Brad Adkins appeals the circuit court's denial, after an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief (PCR) from his convictions for second degree felony murder and second degree assault. Relying on *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Mr. Adkins's sole point on appeal is that his trial counsel provided ineffective assistance when he failed to move for disqualification of the prosecutor, under Mo.Rev.Stat. Section 56.110,[1] on grounds that the prosecutor was inappropriately "interested" in the case because of his professional and personal relationship with the victims and their family. The motion court concluded that "the relationship between the victim's family and that of [the prosecutor] and members of his office provides no basis to disqualify them."

We affirm.

### Facts

Brad Adkins was convicted of second degree felony murder and second degree assault for killing Theresa Morse and injuring her husband Kenneth Morse in a drunk-driving accident. On direct appeal, this court affirmed Mr. Adkins's convictions. *State v. Adkins,* 62 S.W.3d 506 (Mo.App.2001). Mr. Adkins then moved for post-conviction relief under Supreme Court Rule 29.15. The motion court denied relief, and this appeal followed.

Mr. Adkins does not dispute the facts of the accident. Mr. Adkins ran a stop sign and collided with the Morses' vehicle at about 10:30 P.M. on October 21, 1999. Following the accident, an officer at the scene abandoned a field sobriety test when he had to catch Mr. Adkins to prevent him from falling down and hurting himself. The first subsequent breathalyzer test yielded .229 percent blood alcohol content (BAC). Some hours later, when Mr. Adkins's BAC subsided to .17 percent, an officer read Mr. Adkins his *Miranda* warnings. Mr. Adkins waived his rights and made a statement that he had been drinking since 7:00 P.M., had "too much" to drink, and did not remember much about the crash. Mr. Adkins had prior drunk-driving convictions, making this drunk-driving incident a felony.

### The Prosecutor's relationship with the victims' family

Mr. Adkins asserts that the prosecutor had an improper "interest" in the outcome of the case because of his close relationship with the victims' family. Both Mr. and Mrs. Morse worked for the Buchanan County Sheriff's Department. Mrs. Morse's mother, Kay Ezell, worked as a clerk for Buchanan County Circuit Judge Robb, prompting Judge Robb to disqualify himself and have the case transferred to Platte County. Ms. Morse's sister, Lori Hudson (Ms. Ezell's other daughter), had also worked at the Buchanan County courthouse. Buchanan County Prosecutor Dwight Scroggins prosecuted the case. Prosecutor Scroggins testified at the PCR hearing that he knew Kay Ezell "and her family for a long time." Prosecutor Scroggins "knew who [Kenneth Morse] was" and "knew who [Theresa Morse] was ... in some capacity." Mr. Scroggins said of Theresa Morse, "I probably knew her better than I knew Kenny simply because of her mother and sister working in the courthouse." Subsequent to the trial, Ms.

---

1. All citations are to *Mo.Rev.Stat.* (2000), un-     less otherwise indicated.

Ezell retired but has been employed part-time as a secretary in the Buchanan County Prosecutor's Office. Mr. Scroggins testified that in small jurisdictions like St. Joseph or Platte County, it is "very common" for prosecutors to know the victims.

*The Prosecutor was not disqualified*

Platte County Judge Hull presided over both the trial and the PCR hearing. At the PCR hearing, Prosecutor Scroggins said he would consider disqualifying his office or a particular prosecutor if there were a "direct conflict of interest," such as where someone in the prosecutor's office had previously represented the defendant, or if the defendant's relationship with the prosecutor's office would give the impression that the defendant might get favorable treatment, and had done so, e.g., where the defendant in a murder case was a former local police chief. But knowing the victim would not be a "conflict," said Mr. Scroggins. Trial counsel explained that he considered moving to disqualify the prosecutor but elected not to do so, because he was not convinced it would succeed.

*Assertion that the Prosecutor showed unfair bias*

Mr. Adkins asserts that Prosecutor Scroggins told the court in the pre-trial hearing on the motion for change of venue that he would not extend a plea offer to Mr. Adkins, *because* the victims' family did not want an offer extended. No other part of the record corroborates or refutes that assertion that the victims' family's wishes dictated the decision not to offer a plea. At the PCR hearing, Mr. Scroggins did not recall whether he had extended a plea offer, but said, "We generally don't to murderers—or to murder cases."

At the PCR hearing, Mr. Adkins testified that during closing argument, Mr. Scroggins cried and threw exhibits "on the floor, and they'd slide—they slid all the way across towards the tables over there." Trial counsel corroborated this assertion. Mr. Scroggins did not recall crying during his closing argument, and when asked if he recalled throwing pictures across the room, he said, "I'm sure I didn't throw pictures across the room. I'm sure the court would not have allowed [that]."

Mr. Adkins asserts that the prosecutor's closing argument personalized the case, indicating Prosecutor Scroggins's personal "interest." During closing argument, Mr. Scroggins called Mr. Adkins a drunk, and said that the responsibility to prove guilt "is a responsibility that I do not take lightly, but it is a responsibility that in this particular case I take willingly." Mr. Adkins also points out that at trial, Mr. Scroggins occasionally referred to the victims by their first names.

### Discussion

*Standard of Review*

■ Appellate review of a PCR motion is limited to determining whether the motion court's decision was clearly erroneous. Rule R. 29.15(k). Clear error may be found where "the appellate court is left with the definite and firm impression that a mistake has been made." *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987) (internal quotation marks omitted). In the motion court, Mr. Adkins had to prove his claim for relief by a preponderance of the evidence. Rule 29.15(i). The motion court is "free to believe or disbelieve evidence—contradicted or undisputed." *Sanders,* 738 S.W.2d at 857.

To prevail on a Sixth Amendment claim of ineffective assistance of counsel, a movant must show both (1) trial counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Sanders,* 738 S.W.2d at 857. On appeal,

this court need not decide both parts of the test if it decides one part has not been satisfied. *Sanders,* 738 S.W.2d at 857 (citing *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052). Mr. Adkins fails to meet the high standard for either part of the test.

*1.  Trial counsel's performance was not unconstitutionally deficient*

■ In showing that trial counsel was deficient, a movant must overcome "*a strong presumption* that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 858 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052) (emphasis in *Sanders,* internal quotation marks omitted). The movant must show that trial counsel did not act "*reasonably* within prevailing professional norms under all the circumstances." *Id.* (emphasis in original). A strategy is unreasonable, for example, where trial counsel offers into evidence a sex-abuse defendant's prior, unprosecuted sex-abuse allegations, in an attempt to show that the defendant is being subjected to harassment in the present prosecution. *State v. McCarter,* 883 S.W.2d 75 (Mo.App. 1994).

Mr. Adkins has not overcome the presumption that trial counsel's conscious decision not to move to disqualify the prosecutor indicates reasonable trial strategy. Trial counsel rightly recognized that the prosecutor's relationship with the victims did not require disqualification. The disqualification statute reads,

> If the prosecuting attorney and assistant prosecuting attorney be *interested* or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his office, or shall be related to the defendant in

any criminal prosecution, either by blood or by marriage, the court having criminal jurisdiction *may* appoint some other attorney to prosecute or defend the cause.

Mo.Rev.Stat. Section 56.110 (emphasis added). A prosecutor's professional or familial relationship with a *defendant* may create a conflict of interest. No conflict of interest lies here; Mr. Adkins asserts, rather, that the prosecutor was "interested" in the case because of his personal familiarity with the victims.

The Missouri Supreme Court weighed the interest that requires disqualification in *State v. Newman,* where:

> The prosecutor acknowledged that he had served as a pallbearer at [the victim's] funeral; that he and the law firm of which he was a member had represented [the victim] personally and in his business [for years]; that at the time of the trial he was representing [the victim's wife] in an estate matter; [and] that he had visited the [victim's] home socially and hunted with [the victim]. . . .

605 S.W.2d 781, 787 (Mo.1980). The Court found these facts insufficient to require disqualifying the prosecutor. Prosecutor Scroggins is much less close to the victims here than the prosecutor was in *Newman.* Mr. Scroggins did not socialize with the victims' family or represent them as their attorney. The evidence showed only that Mr. Scroggins was casually familiar with the victims' family because of their work in local government. Disqualification was not required. If disqualification were required where a prosecutor casually knows the victims, prosecutors in small jurisdictions would too frequently be prevented from doing their jobs.

Mr. Adkins seeks to distinguish *Newman* on grounds that the *Newman* court, on review of the trial record, found no "action on the part of the prosecutor which

was unfair or reflected excessive personal concern in the outcome of the case." *Id.* at 787–88. Mr. Adkins alleges that Prosecutor Scroggins's personalizing conduct at closing argument and his failure to offer a plea-bargain evince excessive personal concern in the outcome of the case. But the *Newman* court stressed that the trial court has discretion to disqualify the prosecutor. *Id.* at 787. Here, the same judge conducted both the trial and the PCR hearing, and was thus in the best position to assess unfair bias demonstrated by the prosecutor's conduct. The judge concluded that "the relationship between the victim's family and that of [the prosecutor] and members of his office provides no basis to disqualify them." The judge also found that Mr. Scroggins's comments during closing argument were not evidence that he should have been disqualified before trial for his "interest" in the case. Mr. Adkins acknowledges that the trial court has discretion to disqualify the prosecutor, but argues that trial counsel's failure to move for disqualification nevertheless constitutes deficient performance. We think trial counsel's failure to make a motion that appeared likely to fail does not constitute unconstitutionally deficient assistance of counsel.

*2. Trial counsel's failure to move to disqualify the prosecutor did not result in prejudice*

■ "[I]neffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

Neither appellant nor respondent cites a case indicating what facts constitute "prejudice." Two Missouri appellate cases finding ineffective assistance that amounted to prejudice highlight the standard a movant must meet. In *Kenner v. State*, the Court of Appeals found clear error in the motion court's refusal to vacate a judgment. 709 S.W.2d 536 (Mo.App.1986). In Kenner's burglary trial, his attorney failed to object to (1) testimony regarding another burglary Kenner had not been charged with, (2) testimony and a photograph implicating Kenner in illegal drug use, and (3) testimony that drug use violated Kenner's parole. *Id.* at 537–38. The appellate court said, "Movant was prejudiced by this failure to object because it gave the jury the opportunity to assess evidence of [crimes] for which movant was not on trial[.]" *Id.* at 539. In contrast, Mr. Adkins did not suffer from admission of inadmissible evidence as a result of trial counsel's failure to move for Prosecutor Scroggins's disqualification.

In *State v. McCarter*, the appellate court affirmed the motion court's order for a new trial in a conviction for sexually abusing a ten-year-old boy. 883 S.W.2d 75 (Mo.App.1994). At trial, McCarter's attorney offered into evidence a social worker's report stating that McCarter had been accused of, but not criminally charged with, sexually abusing his three grandchildren. *Id.* at 76. Trial counsel explained that he hoped to show that the prior uncharged allegations indicated that the present charges were fallacious. *Id.* at 78. The motion court found that a reasonably competent attorney would not have entered the report, and McCarter was prejudiced. *Id.* at 77. The Court of Appeals affirmed. *Id.* at 79. In contrast, Mr. Adkins's did not suffer from introduction of evidence that no reasonably competent attorney would have introduced.

Mr. Adkins argues that prejudice need not be shown where the basis of the motion is that the prosecutor should be disqualified. The cases stating that no actual prejudice need be shown to disqualify a prosecutor involve conflicts of interest, where the prosecutor previously represented the defendant. *State v. Ross,* 829 S.W.2d 948, 951 (Mo. banc 1992); *State v. Clampitt,* 956 S.W.2d 403, 404 (Mo.App. 1997); *State v. Boyd,* 560 S.W.2d 296, 297 (Mo.App.1977). In other words, on a motion for disqualification, an alleged *conflict of interest*—where the prosecutor has an interest in the *defendant,* rather than the *victims*—may justify disqualification without a showing of prejudice, although we express no opinion on that issue here, where no conflict of interest lies. But this appeal is not on a motion to disqualify the prosecutor; this is an appeal from a Rule 29.15 motion for post-conviction relief for trial counsel's failure to move to disqualify the prosecutor. The difference in procedural posture dictates a different test. Here, the motion is to set aside a conviction on grounds that trial counsel was ineffective, and the *Strickland* test applies. Therefore, Mr. Adkins must show prejudice. This misapplication of conflict of interest cases also appears to underlie Mr. Adkins's incorrect assertion that prosecutors must avoid the "appearance of impropriety."

Because the prosecutor's familiarity with the victims does not require disqualification, failure to move for disqualification does not constitute prejudice. But even if Mr. Scroggins should have been disqualified, prejudice likely does not lie. Mr. Adkins argues that "there was a very real possibility that a neutral prosecutor would have conveyed a reasonable plea offer" and would not have made "inflammatory arguments." Speculation about what a different prosecutor might have done does not meet the requirement that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We find no clear error in the motion court's judgment.

We therefore affirm.

ROBERT G. ULRICH, Judge, and JOSEPH M. ELLIS, Judge, concur.