

# Missouri Court of Appeals

## Southern District

## Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD36923 |
| | ) | |
| CHESTER WILLIAM FEWINS, | ) | **Filed:  August 31, 2021** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF DALLAS COUNTY

Honorable Calvin R. Holden

**CONVICTIONS AFFIRMED; CASE REMANDED TO CORRECT SENTENCES**

Chester William Fewins ("Defendant") appeals his bench-trial convictions of three counts of first-degree statutory rape, one count of attempted first-degree statutory rape, three counts of first-degree child molestation, one count of first-degree statutory sodomy, one count of felony abuse of a child, and one count of tampering with a victim.[1]

Defendant's first point claims the trial court abused its discretion in denying his request for a continuance to, among other things, secure an expert on involuntary intoxication.  The other points correctly claim that the ninety-nine-year sentences imposed in the judgment on various convictions are inconsistent with the trial court's oral pronouncement at sentencing.

---

[1] The court granted Defendant's motion for judgment of acquittal as to count 6 – attempted statutory sodomy in the first degree.

1

Because the trial court *did* continue the case at Defendant's request (albeit for a different reason), we deny his first point and affirm his convictions. We remand the case solely to direct the trial court to correct its written judgment *nunc pro tunc*.

**Background**

All of Defendant's crimes were committed against his step-daughter ("Victim"), who was under 14 years of age at the time they took place. Defendant does not challenge the sufficiency of the evidence supporting his convictions.

Defendant waived his right to a trial by jury, and the case was tried to the court. On November 15, 2019, the second day of trial, Defendant called Wendy Pryor ("Nurse Pryor"), a sexual assault nurse examiner trained in performing sexual assault forensic exams ("SAFE exams"). Nurse Pryor testified that her SAFE exam of Victim revealed that Victim's hymen was intact, and all of the exam's findings were normal. On cross-examination, Nurse Pryor testified that normal exam results were not unusual as she would not expect to see any vaginal trauma in a post-pubescent girl such as Victim because "the body at that point is designed to have sex."

After that testimony, defense counsel announced that he wanted "to call our expert witness that we have discussed previously." Defense counsel indicated that he had called Nurse Pryor just to lay a foundation for this other expert, who he hoped would rebut Nurse Pryor's testimony by opining that Victim's hymen should *not* be intact if Defendant had abused her as she claimed. The State objected to the request for a continuance on the ground that Defendant had not endorsed *any* witnesses, let alone any expert witnesses.

The State claimed that defense counsel had filed a motion for a continuance a month before trial that indicated defense counsel

> wanted an expert to talk about medication and the effect that that would have on [Defendant]. There was, at no point in time, any mention of a request to hire an expert witness with regard to a SAFE or a SAFE exam. The entirety of our conversation on October 10[th] with regard to a continuance was hiring an expert with regard to hallucinations in response to medication.

The trial court then went off the record. When the record resumed, the trial court ruled as follows:

> After discussion with the attorneys, the [S]tate opposes this, and the defense has asked for it, but I am going to allow the defense to provide the information, including the photographs, to an expert that they are going to disclose today to the [S]tate for them to review the information, because it's my understanding this expert has just been asked to look at it and hasn't looked at it and rendered any report yet.
>
> So I will go ahead and continue the bench trial and leave it open while that is pending. I hope to hear something within the next six weeks as to -- that they [have] reviewed it and you want to call them or not call them, because I don't want it to hang around.

The bench trial resumed on July 17, 2020, nearly eight months after it began. At the completion of the trial, the judge found Defendant guilty of the offenses noted above.

**Analysis**

*Point 1 – Alleged "Denial" of a Continuance*

Defendant's first point claims the trial court abused its discretion in denying his request for a continuance on the ground that defense counsel said he wanted to secure an expert witness to testify about the effects of Cymbalta, a prescription medication that Defendant had taken, and Defendant now claims in his brief that involuntary intoxication was going to be one of his primary defenses.

3

Because the trial court *granted* Defendant's request for a continuance, and Defendant does not claim that the length of the granted delay was insufficient to secure any expert that he might have wanted to call, there is no adverse ruling by the trial court for Defendant to appeal. Point 1 fails.

*Points 2 through 6 – Clerical Errors in the Judgment*

Points two through six claim

> [t]he trial court erred in executing its written judgment denoting the length of [Defendant]'s sentence as '99 Years' for [Counts 1, 2, 4, 7, and 9] . . . in that the 99-year sentence recited in [Defendant']s written judgment materially differs from the trial court's oral pronouncement of 'life,' and the oral pronouncement controls over the written, and, therefore, this is a clerical error that should be corrected under [Rule] 29.12(c).[2]

We, and the State, agree.

> If there is a material difference between the trial court's oral pronouncement of sentence and the written judgment, the oral pronouncement of sentence controls. *State ex. rel. Zinna v. Steele,* 301 S.W.3d 510, 514 (Mo. banc 2010). "The failure to memorialize accurately the decision of the trial court as it was announced in open court [is] clearly a clerical [mistake]." *State v. Taylor,* 123 S.W.3d 924, 931 (Mo.App.S.D.2004).

*McArthur v. State*, 428 S.W.3d 774, 781-82 (Mo. App. E.D. 2014).

The trial court's oral pronouncement during the sentencing hearing was:

Count 1 – "life imprisonment without probation";

Count 2 – "life . . . without probation";

Count 4 – "life in the Missouri Department of Corrections";

Count 7 – "life"; and

Count 9 – "life[.]"

All counts were ordered to run consecutively.

---

[2] Missouri Court Rules (2021).

However, the trial court's written judgment substituted ninety-nine-year sentences for life sentences. Those sentences are materially different because, among other things, they have a different effect in determining parole eligibility dates. *State v. Clark*, 494 S.W.3d 8, 14 (Mo. App. E.D. 2016) (citing *State v. Hardin*, 429 S.W.3d 417, 419 (Mo. banc 2014), for the proposition that, under section 558.019.4, RSMo 2000, a "life" sentence is calculated to be 30 years)). Because the written judgment does not conform to the trial court's oral pronouncement of sentence, it contains a clerical error that may be corrected *nunc pro tunc*. *McArthur*, 428 S.W.3d at 782.

Defendant's convictions are affirmed, and the case is remanded to the trial court to enter a corrected written judgment that conforms to the trial court's oral pronouncement of Defendant's sentences on counts 1, 2, 4, 7, and 9.

DON E. BURRELL, J. – OPINION AUTHOR

MARY W. SHEFFIELD, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS